```
 1                IN THE UNITED STATES DISTRICT COURT
                 FOR THE EASTERN DISTRICT OF TEXAS
 2                        MARSHALL DIVISION

 3
    JAPAN DISPLAY                   )(   CIVIL ACTION NO.
 4                                  )(   2:20-cv-283-JRG
             PLAINTIFF(S),          )(   2:20-cv-284-JRG
 5                                  )(   2:20-cv-285-JRG
        versus                      )(
 6                                  )(
    TIANMA MICROELECTRONICS,        )(   MARSHALL, TEXAS
 7                                  )(   JUNE 21, 2021
             DEFENDANT(S).          )(   MOTION HEARING
 8   _____

 9                   TRANSCRIPT OF PROCEEDINGS
                   BEFORE CHIEF JUDGE GILSTRAP
10             UNITED STATES DISTRICT COURT JUDGE

11

12

13

14

15   SUSAN A. ZIELIE, FCRR, RMR
     FEDERAL OFFICIAL STENOGRAPHIC COURT REPORTER
16   Official Stenographic Court Reporter
     United States District Court
17   Eastern District of Texas
     Tyler Division
18   211 West Ferguson Street
     Tyler, Texas 75701
19   903-590-1065
     susan_zielie@txed.uscourts.gov
20

21

22

23

24

25
```

```
1    APPEARANCES:

2            Please see sign-in sheet

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              MARSHALL, TEXAS; MONDAY, JUNE 21, 2021

 2                          3:30 P.M.

 3         THE COURT:  Be seated, please.

 4         All right.  This is the time set for hearing before the

 5  Court on competing motions to compel in the Japan Display, et

 6  al, versus Tianma Microelectronics case.  This is Civil Action

 7  Number 2:20-cv-283, 284, 285.

 8         Let me call for announcements at this time.  What says

 9  the plaintiff?

10         MR. KLEIN:  Plaintiff is ready.  Eric Klein, Jeff

11  Swigart and Jeff Shallman on behalf of Japan Display.

12         THE COURT:  Are you ready to proceed?

13         MR. KLEIN:  We're ready to proceed.

14         THE COURT:  What says the defendant?

15         MR. FINDLAY:  Good afternoon, Your Honor.  Eric Findlay

16  on behalf of Tianma Microelectronics.  We're ready to proceed,

17  Your Honor.

18         THE COURT:  All right.  Thank you.

19         Well, with several hours of time on the premises to meet

20  and confer with regard to these competing motions, I understand

21  that there's been a fair amount of progress with regard to

22  plaintiff's motion to compel, but little to no progress with

23  regard to the defendant's motion to compel.

24         Let's do this, counsel.  Let's start with the

25  plaintiff's motion, and what I'd like is a recital from
```

03:32PM 5
03:33PM 10
03:33PM 15
03:33PM 20
03:34PM 25

1    counsel.  I guess we'll begin with plaintiff's counsel, and

2    then we will get a confirming acknowledgement from defendant's

3    counsel as to what you have worked out and agreed and what

4    remains outstanding and unresolved.  So let me hear from the

03:34PM 5    Japan Display, et al., people on what's been resolved and what

6    remains outstanding as to your motion.

7          MR. KLEIN:  Thank you, Your Honor.  Eric Klein for JDI.

8          Your Honor, we've made some progress regarding the

9    worldwide sales data that we're seeking for reasonably similar

03:34PM 10    products.  We've come to an agreement with the defendant on a

11    procedure to search for and identify reasonably similar

12    products.

13          The parties are going to work together to use product

14    process codes and product technology codes that are identified

03:35PM 15    as part of the individual product codes and search for products

16    and work together in good faith to come up with a list of

17    reasonably similar products.  And for those reasonably similar

18    products, Tianma has agreed to produce worldwide sales data for

19    all of those products regardless of where the product,

03:35PM 20    according to its records, is shipped or billed to.

21          Tianma's records -- and their position is that if the

22    records themselves do not have a ship to or bill to address in

23    the United States, that they're not relevant.  We respectfully

24    disagree, but we're moving past that.

03:35PM 25          For the products in Tianma's sales data that identify a

1    ship to or bill to address in the United States, they're going

2    to provide technical documents and GDS files for those

3    products.

4         I think that sums up the two major issues.

03:36PM 5    There are two issues that we've completely resolved, one

6    of them regarding invalidity contentions.  Tianma has agreed

7    that it will not rely on any of its own prior art products to

8    the extent that those products were not charted as of May 7,

9    2021.

03:36PM 10   Tianma Microelectronics reserves the right to seek leave

11   under the normal course of the Court's rules to amend its

12   invalidity contentions.

13        Regarding the subject matter eligibility contentions,

14   the parties have maintained their previous positions regarding

03:36PM 15   the sufficiency of those disclosures but agree to reserve their

16   arguments.  JDI's position is that if Tianma moves to amend

17   those, that it will oppose any supplement of those.  The grand

18   total of those subject matter eligibility contentions is about

19   two pages for 15 patents, in total, so we believe that they're

03:37PM 20   insufficient.  But we've agreed to take that up at a later time

21   if Tianma intends to seek to enforce those subject matter

22   eligibility contentions or seeks leave to amend them.

23        There's still an outstanding dispute regarding the

24   technical documents that are in possession of Tianma

03:37PM 25   Microelectronics' subsidiaries, including Tianma America and

1   Tianma Japan.  The parties remain at an impasse with respect to

2   these two wholly owned subsidiaries of Tianma, and JDI requests

3   that Tianma be compelled to compel these two documents along

4   the same lines, and Tianma Microelectronics has agreed to

03:38PM   5   resolve this motion to compel.

6           THE COURT:  All right.  Thank you, Mr. Klein.

7           Let me ask someone on behalf of defendant to confirm

8   those representations, both as to what's been resolved and what

9   remains outstanding and in dispute.

03:38PM  10           MR. BARNEY:  Thank you, Your Honor.  James Barney on

11  behalf of defendants.

12          The plaintiff summarized the agreement correctly.  He

13  also summarized the disagreement regarding the subsidiaries

14  correctly.

03:38PM  15          I believe most of what we met and conferred about today

16  was the Tianma Japan subsidiary, not so much the Tianma America

17  subsidiary.  I believe there is a subpoena already out for

18  documents requested of that third party.  So my understanding

19  of what we were mostly here to discuss was the discovery that

03:38PM  20  had been propounded on Tianma China to produce technical or

21  other documents that are in the possession of Tianma Japan.

22          THE COURT:  Well, let's take these two remaining areas

23  of impasse up, both as to sales data and technical documents in

24  possession of these subsidiaries of the defendant.

03:39PM  25          It doesn't appear that there is any dispute that they

1    are subsidiaries.  It just appears that there is a dispute as

2    to the level of possession and control and the other factors

3    that are traditionally looked at to determine whether a parent

4    can be compelled to produce items in the possession of

03:39PM  5    subsidiaries.

6         Mr. Klein, let me hear from you first on that issue.

7         MR KLEIN:  Thank you, Your Honor.

8         THE COURT:  What do you know, and what can you represent

9    to the Court, factually, that would meet the typical analysis

03:40PM  10   for a guardian relationship between the parent and the

11   subsidiaries here?

12        MR. KLEIN:  Yes, Your Honor.

13        Tianma has collected information but it has not

14   collected from Tianma America and Tianma Japan.

03:40PM  15        What we understand the factors to be that would meet

16   this requirement of possession, custody or control, the first

17   one -- and we used the *Diamond* case, that consortium case as a

18   guide.

19        Commonality of the ownership.  We know that Tianma

03:40PM  20   America and Tianma Japan are wholly owned subsidiaries of

21   Tianma Microelectronics.  Tianma Microelectronics has

22   represented that there are no overlapping directors, officers

23   or employees.  We do understand that the documents -- there are

24   documents and conversations between the corporations in the

03:41PM  25   ordinary course of business.

1          Your Honor, we took a third party deposition of Tianma

2     America not too long ago, just on June 8th, and we learned that

3     the engineering department at Tianma America that is in charge

4     of all of the tech support in the United States for Tianma

03:41PM 5     Microelectronics, that they have very frequent contacts about

6     customer issues in the United States with engineers at both

7     Tianma China and Tianma Japan almost on a daily basis.  We

8     believe that that implies that there are documents exchanged,

9     that there is substantive information exchanged, and that

03:41PM 10    that's a commingled relationship that would support the idea

11    that Tianma Micro would have Tianma America and Tianma Japan

12    documents in its possession.

13         THE COURT:  Are you telling me that there's effectively

14    a single composite engineering department for both the parent

03:42PM 15    and the subsidiaries?

16         MR. KLEIN:  Your Honor, effectively, it appears that

17    way.  We still haven't been able to take any discovery from

18    Tianma Japan.  But we believe, with getting discovery from

19    Tianma Japan, we'd be able to confirm that.

03:42PM 20         THE COURT:  All right.  What about your position on any

21    remaining factors?

22         MR. KLEIN:  Finally, the last factor is involvement of a

23    non-party corporation in litigation.  And the CEO of Tianma

24    America has submitted two declarations, one of them in support

03:42PM 25    of Tianma Micro's motion to dismiss and another one in its

1    recent motion to transfer.  So they obviously have control over

2    the CEO of that company to provide declarations in support of

3    their arguments.

4         For Tianma Japan, it appears that Tianma Micro has been

03:43PM 5    able to cherry-pick favorable documents for itself.

6    Specifically, there's a license agreement that they believe is

7    at issue.  It's the subject of the pending motion for a

8    protection order.  So they've been able to get that document

9    from Tianma Japan, and we believe that they can get other

03:43PM 10   documents from Tianma Japan if they desire.

11        THE COURT:  All right.  Anything further?

12        MR. KLEIN:  No, Your Honor.  That's all.

13        THE COURT:  Mr. Barney, do you want to respond, please.

14        MR. BARNEY:  Yes, Your Honor.  Thank you very much.

03:43PM 15        As Your Honor correctly pointed out, the plaintiffs have

16   a burden to show the extent of control necessary to satisfy

17   Rule 34 type discovery on a subsidiary.

18        A couple of points that I'd like to just correct.  First

19   of all, we did not get that license agreement that he's

03:44PM 20   referring to from Tianma Japan.  That was actually in the

21   possession of Tianma China.  So that's a factually incorrect

22   statement he made.

23        There is no -- first of all, there hasn't been discovery

24   on the types of factors that you would need -- that they would

03:44PM 25   need to bring to the table to show sufficient control.  But I

1    can represent that there is no overlap in the board of

2    directors, for instance, between Tianma China and Tianma Japan.

3    They are separate corporate entities.  They maintain that

4    separate identity in the marketplace.

03:44PM  5         THE COURT:  Does the parent have total ownership of each

6    subsidiary?

7         MR. BARNEY:  Yes, Your Honor.

8         THE COURT:  They are wholly owned subsidiaries?

9         MR. BARNEY:  Yes, Your Honor.  That's correct.

03:44PM 10         There are a few other things that I think are pertinent

11   to the Court's analysis.  Some of them touch on these factors,

12   some of them are a little bit adjacent to the factors.

13         One of them is that the scope of the discovery that they

14   are trying to get from Tianma Japan, it's not like some of the

03:45PM 15   case law that you see where sometimes they're looking for one

16   or two specific documents.  They are seeking party discovery on

17   Tianma Japan.  They want everything from Tianma Japan that they

18   are also seeking from Tianma China.  But Tianma Japan is not a

19   party to this lawsuit.  They could have brought Tianma Japan in

03:45PM 20   as a party but they chose not to.

21         So there are some problems there in terms of what is the

22   relevance of the technical documents that they are seeking from

23   Tianma Japan if there are no claims against Tianma Japan in

24   this case.  There's no claims of infringement against Tianma

03:45PM 25   Japan.  I asked them today are they seeking to prove some sort

1    of vicarious liability to hold the parent liable for accused

2    acts of the subsidiary, and the answer was they don't know.

3         So given that there's very little relevance and given

4    that they haven't shown any factors necessary to show control

03:45PM 5    over Tianma Japan --

6         And I would like to go to slide 9, please.

7         I do think the Court has, at least, on occasion, drawn

8    the distinctions when the subsidiary in question is a foreign

9    subsidiary.  So I also think it's relevant to just note that we

03:46PM 10   are talking about a parent corporation organized under the laws

11   of China and a Japanese subsidiary organized under the laws of

12   Japan.  Standing here today, I don't personally know what those

13   laws are and how they sort of portend on the ability of Tianma

14   China to actually demand production of documents from Tianma

03:46PM 15   Japan.  But what I do know is that it's not my burden; it's

16   plaintiff's burden to show those sorts of factors, and they've

17   not done so.

18        The other thing I think is relevant, Your Honor -- and

19   it wasn't mentioned by the plaintiffs -- is this that they

03:46PM 20   filed a 1782 action in California where they sought information

21   from Tianma America, TMA, that they represented was relevant to

22   an ongoing lawsuit between JDI and Tianma China, and prong one

23   of seeking access to documents under 1782 is to prove that

24   Tianma America is a separate entity from the company that is

03:47PM 25   involved in the lawsuit in China.  So they represented to the

1   Court in California that Tianma America is a separate entity

2   and not under the control of China; and, here, they seem to be

3   arguing the exact opposite.

4       THE COURT:  Can you respond to the representations made

03:47PM 5   by Mr. Klein that there is, in effect, one common composite

6   engineering department for both Tianma Microelectronics as well

7   as Tianma Japan and Tianma America?

8       MR. BARNEY:  Yes.  We would disagree with that

9   characterization.

10       He is correct that there is contact, as you would

11   expect, between a parent and a subsidiary.  But contact does

12   not equate to control.  Tianma America is essentially a sales

13   organization, whereas Tianma China is manufacturing.

14       It is true that there is interaction there but I don't

03:48PM 15   -- I'm getting passed a note there.  I'm sorry.

16       And your question was about Tianma America; correct?

17       THE COURT:  My question was that the representations

18   seem to be, from your opponents, that all of these entities

19   rely on one common central engineering department; and if

03:48PM 20   Tianma America is a sales entity and if Tianma Japan is as

21   well, and Tianma China, as you call it, or Tianma

22   Microelectronics, the parent, has that single centralized

23   engineering function within the parent company, that's

24   something that the Court would be interested in knowing, if --

03:48PM 25   and I understand that a subsidiary that is focused on what the

1    parent would view as foreign sales in both Japan and America is

2    probably an entity that they have targeted and limited to the

3    sales function and not the engineering function.  But in making

4    sales of these kind of products, it's completely feasible in my

03:49PM  5    mind that at some point a potential buyer is going to ask an

6    engineering question that the salesperson is not going to know

7    how to answer and they're probably going to pick up the phone

8    or use the email back to the parent in China to say will this

9    work here, will it do this, how do I answer this engineering

03:49PM 10    question.  And that kind of centralized resource may bear on

11    this issue, in my mind.  That makes logical sense to me.

12         But I'm asking you if that comports with your

13    understanding, or are you telling me that Tianma Japan and

14    Tianma America have their own engineering departments, their

03:49PM 15    own other departments that would represent a standalone

16    independent functioning entity, or are they a sales arm of the

17    parent, that the parent supplies all the support as may be

18    needed to facilitate that sales function that the subsidiary is

19    targeted toward?  That's where I'm going with the question.

03:50PM 20         MR. BARNEY:  Thank you, Your Honor.  And I really

21    appreciate that clarification because it does help me to make

22    sure that I'm answering the question correctly.

23         I'd like to start with TMJ, which is Tianma Japan.  They

24    are a completely separate engineering entity.  In fact, the

03:50PM 25    information that the plaintiffs are seeking from Tianma Japan

1    are, in fact, the engineering documents for Tianma Japan for

2    products that they manufacture themselves.  They are different

3    products.

4         It might be important for Your Honor to know that Tianma

03:50PM  5    Japan did not grow as an entity out of Tianma China.  It was

6    actually acquired, but it grew out of a completely different

7    Japanese company called NEC.  So you can imagine that it

8    started as NEC, it went through some transmogrifications, and

9    now it's called Tianma Japan.  But it has its own DNA.  It has

03:51PM 10    its own corporate history.  It has its own engineering

11    department.  It's got it own way of doing things.  Own board of

12    directors, et cetera.  Very different company.

13         Tianma America I think might be a little closer to what

14    Your Honor was referring to because it is a sales arm of Tianma

03:51PM 15    China.  Standing here right now, Your Honor -- I obviously

16    don't want to misrepresent anything -- I think it's fair to say

17    there is contact between the two companies, but I don't think

18    it's correct to say that they completely share the same

19    engineering department.  But I would not be surprised if there

03:51PM 20    are questions along the lines Your Honor posited, calls were

21    being made back to Tianma China.

22         So Tianma America and Tianma Japan are very, very

23    different in terms of their relationship with the corporate

24    parent.

03:51PM 25         THE COURT:  How long ago did the parent acquire what is

1   now Tianma Japan or as TMJ, as you call it, as a prior

2   standalone entity or part of NEC or whatever its prior origins

3   were?  How much time has passed?

4        MR. BARNEY:  2011, Your Honor.

03:52PM 5        THE COURT:  Almost 10 years, or perhaps 10 years

6   depending on when in the year it happened.

7        MR. BARNEY:  That's all I have, unless Your Honor has

8   other questions on this particular issue.

9        THE COURT:  Okay.

03:52PM 10        Do you have anything further, Mr. Klein?

11        MR. KLEIN:  Your Honor, just one additional thing.  With

12   respect to Tianma Japan having its own separate engineering

13   department, we also learned during that deposition with Tianma

14   America that Tianma China actually makes some products for

03:52PM 15   Tianma Japan.  And it would seem to be counterintuitive if

16   they're a standalone company, with their own engineering

17   department, that Tianma China is actually making products for

18   them.

19        And we haven't been able to explore the extent of those

03:53PM 20   products of how many there are or what they look like, but

21   there appears to be some products that Tianma China is making

22   for Tianma Japan, and it seems like this would be something

23   that we should be allowed to seek discovery about.

24        Nothing further.

25        THE COURT:  Thank you.

1        MR.  BARNEY:   Your Honor, may I be briefly heard on that

2    last point?

3        THE COURT:  You may.

4        MR.  BARNEY:   Just to be clear, Your Honor, Tianma China

03:53PM 5    is and will produce all documents regarding those types of

6    products.  So they're going to get full discovery on anything

7    that Tianma China manufactures, regardless of whether they're

8    manufacturing that for Tianma Japan or any other customer.

9        He is correct that Tianma China does manufacture some

03:53PM 10   quantity of the product, but that doesn't change the fact that

11   Tianma Japan is a completely separate, standalone, albeit

12   wholly owned subsidiary, with its own manufacturing facilitates

13   and engineering know-how.

14       MR. KLEIN:  Your Honor, if I may, one quick thing.

03:54PM 15   THE COURT:  Final go-round, Mr. Klein.

16       MR. KLEIN:  One issue to discuss -- I think it's

17   important -- is that Tianma Microelectronics is going to give

18   us whatever Tianma Japan products they have, but they filed a

19   protection order in this case, so that means they have access

03:54PM 20   to more documents that they don't want to provide.  So they're

21   seeking protection for something, so that indicates to us that

22   they have possession, custody and control over all of those

23   documents.

24       THE COURT:  All right.

03:54PM 25   Well, with regard to the plaintiff's motion in these

1   discrete remaining areas of disagreement, and looking at the

2   various factors as to the issue of the actual nature of the

3   relationship between the parent and these two wholly owned

4   subsidiaries, I'm satisfied that Tianma America meets the test

03:55PM  5   of being part and parcel of the parent corporation, and I'm

6   going to find that the plaintiffs have met their burden under

7   the analysis discussed today, and I'm going to order Tianma

8   America to produce these outstanding discovery items as

9   requested.  I don't find that the corporate relationship is

03:55PM 10   such that it would be an impediment to that.

11       However, with regard to Tianma Japan, they clearly are

12   wholly owned by the parent, but it appears they maintain a

13   higher level of independent functionality, and I'm not quite

14   convinced that the plaintiffs met their burden here under the

03:55PM 15   multi-factor test.

16       What I am going to do is I'm going to order Tianma Japan

17   to produce a corporate representative who can be deposed by

18   plaintiff with regard to these issues, and we'll take some

19   discovery on whether the test is met or whether the test is not

03:56PM 20   met.  And then I will return to this discovery dispute with

21   regard to Tianma Japan, unless the parties, based on that

22   discovery, can either agree that they're covered or they're not

23   covered.

24       I don't think I know enough to make a decision today on

03:56PM 25   Tianma Japan.  I'm satisfied I know enough about Tianma America

1    to make the decision.  So that's the Court's ruling on these

2    two areas.

3         I will leave it to the parties to meet and confer as to

4    when and how that deposition can best be taken.  It needs to

03:56PM 5    happen sooner rather than later.  Okay.

6         MR. FINDLAY:  Your Honor, may I ask for one point of

7    clarification on the deposition, or perhaps raise one issue

8    with respect to the deposition?

9         THE COURT:  Go ahead, Mr. Findlay.

03:57PM 10        MR. FINDLAY:  As Your Honor is well aware, COVID still

11   is ongoing, much more severely in Japan than it is here, is my

12   understanding.  It's also been my understanding -- and we

13   talked about this a little bit before -- that, typically, when

14   we used to take depositions in Japan, we would have to do so at

03:57PM 15   the American consulate or embassy, and it's my understanding

16   that those are still closed for non-essential business, and

17   that depositions are considered non-essential business.

18        Might the Court be willing to entertain that we provide

19   that information through some written discovery format, as

03:57PM 20   opposed to the deposition, because of those?  I'm not sure

21   whether we could get that done, Your Honor, and I don't want us

22   to be seen as thwarting Your Honor's ruling.

23        THE COURT:  Well, I want to afford the parties a large

24   amount of flexibility here.  I'm concerned about the

03:57PM 25   information, I'm not so concerned about how you get it, and

1    I'll direct the parties to meet and confer about the

2    possibility of using what are, in effect, interrogatories in

3    lieu of an oral deposition.  However, this is not the only case

4    on my docket, as you know, with foreign parties, and there have

03:58PM  5    been many, many issues like the one you just raised in other

6    cases.

7         I'll be candid, the burdens have been higher in the past

8    than they are now.  The ability to take a corporate

9    representative of Tianma Japan and move them to some place like

03:58PM  10   Singapore or Macau or some place like that, where they can give

11   a deposition freely and do it virtually and remotely, that's

12   happening in a lot of other cases now.

13        MR. FINDLAY:  Yes, sir.

14        THE COURT:  So I'm not persuaded your Tianma Japan

03:58PM  15   representative can't be deposed.  That doesn't mean -- if you

16   and the plaintiffs can work out a method by way of written

17   question that they can get the information they would otherwise

18   try to seek through the deposition, I'm certainly not going to

19   stand in the way of any such agreement.

03:59PM  20        But just based on what I know from multiple other cases

21   -- and, yes, there are higher levels of COVID in other

22   countries than we have, thankfully.  But there are positive

23   indicators in many countries around the world, and there is a

24   loosening of some of what you're complaining about now that

03:59PM  25   didn't exist three, six, nine months ago.  So I'm not persuaded

1    they can't be deposed.  It may be difficult, but I'm not

2    persuaded they can't be.

3            So, basically, you two sides need to talk about this.

4    And if plaintiff can come up with a list of discrete questions

03:59PM 5    and is willing to do that, I'm certainly not going to stand in

6    the way of it.  But I'm not prepared to, just based on the

7    general representations, say that the deposition can't be

8    produced by Tianma Japan's representative.  And barring

9    something more specific and grandular than what you've just

04:00PM 10   told me, I'm still inclined to order it, if there's not an

11   alternative means agreed to by both sides.

12           MR. FINDLAY:  Understood, Your Honor.  Thank you very

13   much.

14           THE COURT:  So just to make the record completely clear,

04:00PM 15   I'm directing that that discovery related to the relationship

16   between Tianma Microelectronics, the parent, and Tianma Japan,

17   go forward, and I'm ordering it by deposition of a

18   representative of Tianma Japan, prepared to address those

19   topics as specified by plaintiff.  I'm not going to prohibit

04:00PM 20   the parties to agreeing to an alternate means, if they can

21   agree to it, and I'll direct the parties to discuss it and

22   explore it.  But barring some mutual agreement to an

23   alternative means, I'm going to order the disposition to go

24   forward.  Okay?

04:00PM 25           MR. FINDLAY:  Understood.  Thank you, Judge.

1          THE COURT:  Let's turn our attention to the remaining

2     motion to compel, which doesn't have as much -- well, to my

3     knowledge, there's been really no progress made on resolving

4     the defendant's motion.

5          And I should have specified this earlier.  The

6     plaintiff's motion to compel that we've just been dealing with

7     is Document 49 on the Court's docket today.  We're going to

8     turn to Document 64, which is the defendant's motion to compel.

9          Why don't we start with a brief overview by the moving

10    defendant, followed by a response by the plaintiff, as to

11    exactly what the problems are here, and then we will get into

12    greater detail as we drill down.

13         Let me hear from the moving defendant first.

14         MR. BARNEY:  Thank you, Your Honor.  James Barney,

15    again, on behalf of the defendants.

16         By way of background, I think it would be good to know

17    that the plaintiffs and the defendants have similar companies,

18    so JDI and Tianma are both in the business of manufacturing LCD

19    components.  And their business model is very similar in the

20    sense that that supply these components to manufacturing

21    entities, who then integrate them or otherwise pass them along

22    to OEMs and other organizations.  And as a result, both parties

23    have many, many, many products in their portfolio.

24         And so one problem this has presented -- and this is

25    from the plaintiff's perspective -- is they accuse 2,400

1    products of ours of infringement.  But they recognize that that

2    may not be the sum total of all the products that are relevant,

3    and so they asked us to produce similar products.  And as Your

4    Honor knows, we have worked very hard with them to come up with

04:03PM   5    a methodology to do that.  It may not be perfect, but the

6    parties were able today to hammer out a methodology of using

7    product codes to try to get at, okay, what is reasonably

8    similar to the 2,400 that you've accused of infringement.

9         And part of the problem -- and I'm speaking essentially

04:03PM   10   from the plaintiff's perspective -- is some of those products

11   are actually confidential.  So, even if they wanted to, they

12   couldn't find those product codes and information on the open

13   market -- which is true.  And so that is part of the reason

14   that they needed us to do that, and we are doing that.  That is

04:03PM   15   part of what we hammered out today over the course of several

16   hours.  And plaintiffs worked very closely with us, and we were

17   happy to get to an agreement on that.

18        On the defense side, we have the exact same problem.  We

19   have accused -- excuse me -- we have asserted that there are a

04:03PM   20   total of about 150 prior art products that the plaintiffs have

21   sold, and that's some that are sold by JDI, others that are

22   sold by the Toshiba entity that got absorbed into JDI so it is

23   now a part of JDI, and a few from Panasonic and Sony as well.

24   So it's totalling about 150.

04:04PM   25        These are prior art products that they manufactured and

1    sold prior to the priority date of the patent.  We were able to

2    identify those through investigating public means, if you will.

3    But we are not at all confident that we've got the sum total,

4    just like they weren't confident of what really is the state of

04:04PM  5    the prior art surrounding those products.

6         So we asked them to do exactly what they asked us to do,

7    which is not only to produce information about those products

8    but to produce information about similar prior art products.

9    They have refused.

04:04PM 10         Today, during our negotiations, we asked:  Wouldn't it

11    be fair just to use the same exact methodology, you give us

12    your product codes, and we'll work together to essentially

13    create a methodology, just like we did the accused infringing

14    products so that we can be assured that we are getting the true

04:05PM 15    representation of what the stated prior art was surrounding

16    those 150 or so products that we've identified.  They have

17    refused.

18         They've demand to know what case can you point to that

19    says that we are required to do that.  And I'm not at all

04:05PM 20    trying to be flippant, but my response was goose v gander.  We

21    are trying to gather information for our defenses as well as a

22    likely counterclaim which will be deposited with the Court

23    within a few days, so we are also going to be a plaintiff.

24    We're going to be a counter-claimant/plaintiff under the

04:05PM 25    declaratory judgment of invalidity, and so we feel we are

1    entitled to the same scope of discovery that they are entitled

2    to on the infringement side.

3         One of their arguments is, well, that's apples and

4    oranges, because, infringement, the more products that we can

04:05PM  5    discover on the infringements side is expanding our base of

6    damages, basically.  Whereas, on the invalidity side, you only

7    need one reference to invalidate our patents.

8         Of course, that's not quite correct.  Because unless

9    they're willing to agree that the prior art products that we

04:06PM 10    just happen to be able to put our finger on is, in fact, an

11    invalidating reference -- which I'm sure they're not going to

12    agree to -- we need discovery to make sure that we actually

13    have the best prior art that's available.  And we can't get

14    that information because it resides solely with the plaintiffs,

04:06PM 15    because many of those products are, in fact, secret.  We can't

16    get that information through any other source other than

17    through the plaintiffs.

18         So we really think this is just a question of fairness.

19    We're asking for the exact same scope of reasonable similarity

04:06PM 20    as they asked for on the infringement side.  We don't see how

21    that could possibly be too burdensome on them since they've

22    accused 2,400 and we're actually giving them something in the

23    range of 9,000 sales records and thousands of -- at least,

24    hundreds and hundreds and hundreds of these digital files that

04:06PM 25    they've asked for, and we're only asking for a small fraction

1   of that on the prior art side.  So that's a brief summary of

2   the first part of our motion.

3       The second part is a little different.  It has to do

4   with damages.  Part of their damages case -- they dropped lost

04:07PM 5   profits but they are still maintaining a case for reasonable

6   royalty, and as part of the *Georgia-Pacific* factors, we need to

7   be able to show what a reasonable negotiator would have thought

8   at the time of the hypothetical negotiation.  And one of the

9   factors to consider is what is the difference between the

04:07PM 10  non-patented -- the prior art, the non-patented products, and

11  the patented products; what were customers told about those

12  patented features; were they features that customers cared

13  about; were they features that customers were willing to pay a

14  premium for; or are these features that are so sort of

04:07PM 15  minuscule that they fly under the radar and nobody really cared

16  about them.  Goes to what a reasonable negotiator would have

17  thought a reasonable royalty is.

18      So we have propounded discovery to them to identify

19  which products of theirs they consider to be a covered product,

04:08PM 20  that is, products covered by the patents, and which products

21  were being sold coterminous with those, at the same time or

22  slightly before, that were not covered by the products, so we

23  can compare the difference in the technical aspect of those

24  products, as well as sales, marketing and purchasing

04:08PM 25  information.  We need that information to make out our own case

1    on damages -- to defend against their case on damages, I should

2    say.  And, again, we don't feel that this is unreasonably

3    burdensome.

4         We did, today, to try to reach some contours in terms of

04:08PM  5    timelines; could we narrow it down to specific timeframes.  And

6    we even offered to narrow it down to basically a representative

7    set of products within each of those categories.  But,

8    unfortunately, we were not able to make any headway with that.

9         So that's the overview, Your Honor.

04:08PM 10         THE COURT:  All right.  Let me hear from plaintiff.

11         MR. KLEIN:  Eric Klein, Your Honor.

12         Your Honor, I was -- we were a little surprised to hear

13    that Tianma would be filing counterclaims.  They currently have

14    a motion to transfer this pending that was filed 10 months

04:09PM 15    after the complaint was filed.  Actually, at 3 o'clock this

16    afternoon, we received notification that the third IPR has been

17    filed; again, 10 months after the case has been filed.

18         And in those IPRs, they tell the -- one was filed on

19    June 8th, one on June 9th, and one today.  And we were told

04:09PM 20    today that there were more coming.

21         And in their representation to the patent office, they

22    say that our trial date here is speculative, so they're talking

23    about having counterclaims.  But it seems hard to believe that

24    that's going to happen; they're trying to get out of this

04:09PM 25    district.

1    As far as what documents they're seeking, we do need to

2 correct something.  They said that we were only willing to

3 produce information about nine products.  That's not correct.

4 For the 150 products that they've identified, we're going to

04:10PM 5 give them any documents that we have.  We're going to give

6 those to them.  We should have the first nine documents that

7 are JDI products produced this week sometime.

8    For the remaining products that are Toshiba, Sony or

9 Sharp products, that they are alleging are -- Toshiba --

04:10PM 10 products from our predecessor, we are reviewing that and

11 looking to see if we have access to those documents.  And if we

12 do we're going to give them those documents.

13    What they're seeking is pretty extraordinary.  They

14 would like to get -- and in their motion, it says product --

04:10PM 15 they would like to get documents about products incorporating

16 the claim features of the asserted patents and those that do

17 not.  They want all of our product information:  Past, present

18 and future.  They want marketing information, sales

19 information, and all technical documents.

04:11PM 20    Now, there was a proposal that was made throughout today

21 that was an attempt to mirror what we've requested.  But we're

22 plaintiffs in this case.  We've provided very detailed

23 preliminary infringement contentions, that include hundreds of

24 pages of analysis, to show why similar products should be

04:11PM 25 included in the case.  We've taken extraordinary efforts to

1    demonstrate that.

2          What the defendants' doing is basically saying that they

3    should get access to everything that we have, and there's at

4    least three reasons why that shouldn't happen.  There's, under

04:11PM  5    the local patent rules, 3-1F, if a party wishes -- claiming

6    patent infringement wishes to preserve the right to rely on for

7    any purpose that their apparatus or instrumentality practices

8    the invention, the party must identify that.  So there is a

9    requirement that if we're going to rely on it, we have to do it

04:11PM 10    upfront.  And we are not relying on our own products under

11    3-1F.

12          There's also, under 3-2A, the document production that

13    accompanies infringement contentions, that you have to provide

14    information sufficient to evidence each discussion with,

04:12PM 15    disclosure to, or other manner of providing to a third party or

16    sale or offer for sale the claimed invention prior to date of

17    application for the patent-in-suit.  There's a requirement that

18    we have to provide all this information.  So, to the extent we

19    had this information, it's been provided.

04:12PM 20          What the defendants want to do is go back and have us do

21    a wholesale analysis of all of our products, without regard to

22    dates, without regard to technology.  Because they want it if

23    it embodies the claim or if it doesn't embody the claim because

24    they want to make comparisons to it.  This seems unprecedented.

04:12PM 25    We couldn't find any authority that would allow them to get

1    this scope of discovery.

2         To the extent that they've identified the products,

3    we're going to give those to them, because we assume they've

4    done their Rule 11 examination of those products to determine

04:13PM 5    that they are relevant to the case.  And we're not going to

6    question that, so we're giving them those documents.  But to

7    ask us to come in and to analyze our own products with respect

8    to claim features seems to be overly-broad and unduly

9    burdensome to plaintiff's counsel.  There doesn't seem to be

04:13PM 10   any support for that.

11        And the third reason, when these patents were filed,

12   there are duties that you have to the patent office,

13   representations that inventors have to make that they are --

14   have a duty to disclose information that's material to the

04:13PM 15   patentability, and we've done that.  We've gone back, we've

16   done that.

17        If they have specific information about a product that

18   they think should be identified, and we didn't identify that,

19   they should tell us about that.  But having us go back and

04:13PM 20   completely review all of our documents -- again, past, present

21   and future -- for all sales information, all marketing

22   information, and all engineering information, basically, all of

23   the documents we have about every product we've ever made,

24   seems overly-broad.

04:14PM 25        Your Honor, it appears that there -- and I'll use the

 1  phrase that our opposing counsel used -- is that's goose for

 2  gander.  I don't believe that that's something that is proper

 3  to use in the context of a patent case when you have a

 4  plaintiff and a defendant.  There's certain things that

04:14PM  5  plaintiffs are required to do, pre-suit investigation, that is

 6  very, very extensive and complex, and we've done that.  And the

 7  defendants want to come in and say that they have the right to

 8  get the same types of documents that we do, after we've

 9  provided hundreds and hundreds of charts and pages of documents

04:14PM 10  supporting our preliminary infringement allegations.  There's

11  just no justification for that, that we feel.  And we tried to

12  work out a deal with them, but it all came back to us having to

13  analyze our own products for claim futures.  That's going to

14  put us in a lot of uncomfortable situations where we don't

04:15PM 15  think that we'd be able to agree on things.  Like, claim

16  construction.  What is a claim feature?

17       We have a Markman hearing coming up in August.  And,

18  trying to discuss those things with them now, there's going to

19  be disagreements about what claim features are and what they

04:15PM 20  mean and what we should look for.

21       We just don't think that this is something that -- if

22  it's not taken care of now, we believe we'll just kick the can

23  and find ourself right back in court later on, if it's not

24  addressed now.  That's why we felt like we had to oppose this

04:15PM 25  now and couldn't come up with a workable solution.

1          That's all, Your Honor.

2          THE COURT:  All right.

3          Anything additional, Mr. Barney?

4          MR. BARNEY:  Just a few things, Your Honor.

04:15PM 5          My colleague on the other side has tried to draw a

6     distinction between being a plaintiff and a defendant in terms

7     of what types of discovery you're entitled to.  I don't believe

8     that's correct.  I think we are entitled to full discovery.  We

9     have affirmative defenses that we need to try to make out.

04:16PM 10         He talked about how they provided detailed claim charts

11    on their infringement reads.  We would love, Your Honor, to be

12    able to provide detailed invalidity charts based on the prior

13    art products we've identified, and we will absolutely do so as

14    soon as they produce those to us.  We requested those back in

04:16PM 15    March.  150-plus prior art products that they manufactured and

16    that they have complete possession of and have access to.  It's

17    now June, and we still don't have the first one.  They say they

18    are going to produce nine of them to us.  We have requested

19    150, and we haven't even gotten the first one.  So we can't

04:16PM 20    even begin to do claim charts until we get the technical

21    specification from them, which are in their possession.  They

22    are not public.  They were sold, so they're prior art.  But the

23    technical details of them are in their possession, and we don't

24    have access to them.

04:16PM 25         The other factors, the other things he went through, I

1  don't think are terribly relevant.  The fact -- this goes more

2  to the sales -- to the damages part of our request.  But it is

3  true that if they intend to rely on their own products as part

4  of a damages case, they have to identify that.  But that

04:17PM 5  doesn't mean we can't rely on their products as part of our

6  damages theory of the case because it's relevant to the

7  *Georgia-Pacific* products.  And that's exactly what we intend to

8  do.  We would like to rely on the covered products, the ones

9  that are covered by their patents, as well as the ones that are

04:17PM 10  not covered by their patents, to discover whether -- in terms

11  of how customers view those, and in terms of sales, and in

12  terms of whether they're able to charge a premium, whether it

13  made any difference.  That goes directly to a reasonable

14  royalty.

04:17PM 15       THE COURT:  How much time has passed between the

16  identifying of these 152 prior art devices and today, when,

17  despite representations of 10 of them being produced, you

18  haven't gotten anything?

19       MR. BARNEY:  I believe, since March.  March 3rd, Your

04:17PM 20  Honor.

21       THE COURT:  Do you want to tell me, Mr. Klein, why you

22  haven't been able to deliver anything?  We can talk about

23  whether it should be 10 or 152; but, right now, we're sitting

24  on zero.  Tell me why that's the case, with this having been

04:18PM 25  tee'd up three months ago or going on four months ago.

1    MR. KLEIN:  Yes, Your Honor.  We've been working on

2  several discovery disputes with the defendants in the case.  I

3  do believe that we're working diligently towards getting all of

4  that done.  I'm not -- the reason that it hasn't been produced

04:18PM  5  is we're still working on gathering that.

6         For the nine products, we have no excuse for that.

7  We're going to get it produced this week.

8         For the other products, they're not JDI products.  But

9  to the extent we have them, we will get them out very quickly.

04:18PM 10         I would also note that we have accused, as Mr. Barney

11  said, 2,400 products, and we've only received technical

12  documents for 100 products so far.  So the parties are working

13  together to try to get that done, but I don't think Tianma is

14  doing much better.  And we're hoping that the hearing today and

04:19PM 15  agreements that we made will shed some light on that.

16         As far as pleading the defenses, they don't have any

17  affirmative defenses, they don't have counter-claims.  They

18  haven't answered in the case yet.  They filed a motion to

19  transfer.  And under Rule 26, you shouldn't be able to take

04:19PM 20  discovery about speculative or anticipated or likely potential

21  claims or defenses, so we would like to note that for the

22  Court.

23         But we will get those documents produced as soon as

24  possible; very quickly.

04:19PM 25         THE COURT:  Mr. Barney, you told me a minute ago you

1    were about to file counter-claims in this case.  When do you

2    anticipate that happening?

3         MR. BARNEY:  If I understand correctly, they are due on

4    the 23rd, which is this Wednesday.  And what we anticipate is

04:20PM 5   affirmative defenses, including of invalidity and a

6    counter-claim for declaratory judgment of invalidity.

7         THE COURT:  Okay.

8         The typical discovery cross, counsel, as you well

9    understand, is an evolving process where you produce what you

04:20PM 10  know about, what you can easily lay your hands on, and that

11   generally leads to the next step down the path and the next

12   step down the path, whether it's on the infringement side on or

13   the invalidity side.

14        And, quite honestly, telling me why the other side

04:21PM 15  hasn't produced much is not generally a good defense for why

16   you haven't produced much.

17        Mr. Klein, I'm going to order these responses concerning

18   the 10 JDI products and the one Panasonic product.  And maybe

19   I'm characterizing them wrong, but there's something on the

04:21PM 20  order of nine or 10 that you're ready and should have already

21   produced.  You are going to produce those within the next

22   10 days.

23        And then, Mr. Barney, you're going get the benefit of

24   seeing those; and if that leads to a little more knowledge

04:21PM 25  where you can take the next step, then you're going to take the

1    next step.  And the same thing is going to happen on the

2    infringement side.

3          And 2,400 products is a whole lot of products to accuse,

4    but I don't know if they are 2,400 distinct products.  I

04:22PM  5    suspect that there may be a much smaller group where there's

6    slight variations on a whole lot of products within each sub

7    part.

8          But, nonetheless, I expect the process to go forward

9    from both sides.  And I'm going do this.  I'm going to order

04:22PM 10    the plaintiff to produce these nine or 10 groups of evidence

11    that they've already identified within 10 days, and then I'll

12    carry the balance of this motion.

13          If this needs to be a continuing process, I'm happy to

14    make you all come to Marshall, Texas, as many times as it takes

04:22PM 15    to keep the wheels turning.  There are more efficient and

16    cost-effective ways for this process to go forward than for me

17    to do that.  But the plaintiff should have taken that step by

18    now, and there's really not much excuse for it, and they're

19    going to so do promptly.  And then I'll be open to what that

04:23PM 20    leads the defendant to ask for next.

21          And the same thing is going to work in the opposite

22    direction.

23          And if you all can't coordinate this process between

24    yourselves, I'll be happy to hold your hand periodically and

04:23PM 25    have you come back here and I'll do it for you.  But I suspect

1    that that's not what your clients want, and I suspect that

2    that's not what your clients wants to pay for.

3         So at this point I'm prepared to order plaintiff to

4    produce those items within 10 days.  And then I want both

04:23PM  5    sides, after there's an opportunity to look at it and analyze

6    it, step back and re-engage.

7         I'm not going to close this motion.  I'll leave it open.

8    And I want to hear from you after these have been produced,

9    there's been an opportunity to review them.  I want a joint

04:24PM 10    status report in 21 days as to where this process stands.  And

11    I may have to make you file joint reports and bring you back

12    and go through this as many times as it takes.  There's a hard

13    way and there's an easy way, and which way we go is not up to

14    me, it's up to you all.

04:24PM 15         But that's what I'm prepared to do at this point.  And

16    then we'll reassess the situation after what's already should

17    have been produced has been, and we'll see where we go from

18    there.

19         Any questions about my ruling?

04:24PM 20         MR. BARNEY:  No, Your Honor.

21         MR. KLEIN:  No, Your Honor.

22         THE COURT:  All right.

23         Is there anything else that you're aware of that's not

24    been raised with me this afternoon that you believe is

04:24PM 25    appropriate and fully briefed and ready to be raised?

1    I'm aware of some of these other motions you've alluded

2  to, but they haven't been fully briefed yet.

3    MR. KLEIN:  Nothing from plaintiffs, Your Honor.

4    MR. BARNEY:  Nothing from defendants, Your Honor.

04:25PM  5    THE COURT:  All right.  That will complete today's

6  hearing before the Court.  The court stands in recess, and

7  you're excused, counsel.

8    [PROCEEDINGS IN RECESS]

9

10    OFFICIAL COURT REPORTER'S CERTIFICATE

11    I (we) certify that the foregoing is a correct

12  transcript of proceedings in the above-entitled matter.

13

14    */S/ Susan A. Zielie, RMR, FCRR*

15    Susan A. Zielie, RMR, FCRR
      June 30, 2021

16

17

18

19

20

21

22

23

24

25