## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| JAPAN DISPLAY INC.,  PANASONIC LIQUID CRYSTAL DISPLAY CO., LTD., | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CIVIL ACTION NO.  2:20-CV-00283-JRG (LEAD CASE) |
| TIANMA MICROELECTRONICS CO. LTD., | § § § | CIVIL ACTION NO.  2:20-CV-00284-JRG |
| *Defendant*. | § § § | CIVIL ACTION NO.  2:20-CV-00285-JRG (MEMBER CASES) |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Tianma Microelectronics Co. Ltd.'s ("Tianma") Motion to Transfer to the Central District of California (the "Motion"). (Dkt. No. 69). Having considered the parties' briefing and oral arguments at the Court's hearing on August 17, 2021 (Dkt. No. 108), and for the reasons stated herein, the Court is of the opinion that the Motion should be **DENIED**.

## I.      BACKGROUND

On August 31, 2020, Plaintiffs Japan Display Inc. ("JDI") and Panasonic Liquid Crystal Display Co., Ltd. ("Panasonic") (collectively, "Plaintiffs"), both Japanese entities, filed suit for patent infringement against Tianma, a Chinese entity. (*See* Dkt. No. 1 ¶¶ 1, 3–4). Plaintiffs filed three separate actions against Tianma, which were later consolidated by the Court. (Dkt. No. 57). Plaintiffs allege that Tianma infringes U.S. Patent Nos. 8,218,119; 10,139,687; 9,715,132; 9,793,299; 10,018,859; 8,218,118; 10,423,034; 10,330,989; 7,936,429; 9,310,654; 8,830,409; 9,817,288; 7,636,142; 7,385,665; and 9,939,698 (collectively, the "Patents-in-Suit"). (Lead Case No. 2:20-CV-283, Dkt. No. 1; Member Case No. 2:20-CV-284, Dkt. No. 1; Member Case No. 2:20-CV-285, Dkt. No. 1).

On June 15, 2021, Tianma filed this Motion seeking transfer of these actions to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a). (Dkt. No. 69). Much of the focus of the Motion is on evidence from Tianma's U.S.-based subsidiary and non-party, Tianma America, Inc. ("Tianma America"), which is headquartered in Chino, California. (*Id*. at 4).

## II.    LEGAL STANDARD

If venue is proper in the district where a case was originally filed, a federal district court may transfer the case "[f]or the convenience of parties and witnesses" to "any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Section 1404(a)'s threshold inquiry is whether the case could initially have been brought in the proposed transferee forum. *In re Volkswagen AG*, 371 F.3d 201, 202–03 (5th Cir. 2004) [*Volkswagen I*]. The question of whether a suit "might have been brought" in the transferee forum encompasses subject matter jurisdiction, personal jurisdiction, and propriety of venue. *See Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960). Only if this statutory requirement is met should the Court determine whether convenience warrants a transfer of the case. *See Volkswagen I*, 371 F.3d at 203; *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) [*Volkswagen II*]. The burden to prove that a case could have been brought in the transferee forum falls on the party seeking transfer. *See id.* at 315; *Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963).

If that inquiry is satisfied, the Court determines whether transfer is proper by analyzing and weighing various private and public interest factors. *Id.*; *accord In re Nintendo Co., Ltd*, 589, F.3d 1194, 1198 (Fed. Cir. 2009); *In re Apple Inc.*, 979 F.3d 1332, 1338 (Fed. Cir. 2020) (applying Fifth Circuit law). The private interest factors are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost

2

of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315 (quoting *Volkswagen I*, 371 F.3d at 203). The public interest factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* (quoting *Volkswagen I*, 371 F.3d at 203) (alterations in original). The factors are neither exclusive nor exhaustive, and no one factor is dispositive. *Id.*

The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *See id.* Although the plaintiff's choice of forum is not a separate factor, respect for the plaintiff's choice of forum is encompassed in the movant's elevated burden to "clearly demonstrate" that the proposed transferee forum is "clearly more convenient" than the forum in which the case was filed. *Id.* at 314–15; *Apple*, 979 F.3d at 1338. While "clearly more convenient" is not necessarily equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-CV-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). In considering a transfer under § 1404(a), the Court may consider undisputed facts outside of the pleadings, but must draw all reasonable inferences and resolve factual disputes in favor of the non-movant. *Vocalife LLC v. Amazon.com, Inc.*, No. 2:19-CV-00123, 2019 WL 6345191, at *2 (E.D. Tex. Nov. 27, 2019); *cf. Trois v. Apple Tree Auction Cent. Inc.*, 882 F.3d 485, 492–93 (5th Cir. 2018) (reviewing a transfer under § 1406); *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009) (reviewing enforcement of a forum-selection clause).

3

### III.    ANALYSIS

#### a.    Tianma Has Not Shown That These Cases Could Have Been Brought in the Central District of California

As an initial matter, the Court must address the threshold question under § 1404—whether these cases could have been initially brought in the proposed transferee forum. The parties gave this issue cursory attention, at best, in their briefing and at the hearing. As a result, what is contained in Tianma's Motion and their arguments before the Court is insufficient to meet this threshold burden.

Proving that the transferee forum has subject-matter jurisdiction, personal jurisdiction, and proper venue is an explicit statutory requirement of the movant—not the respondent. It is also a threshold question. *See Volkswagen I*, 371 F.3d at 203 ("[W]e have suggested that the *first determination* to be made is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." (emphasis added)); *Volkswagen II*, 545 F.3d at 312 ("The *preliminary question* under § 1404(a) is whether a civil action "might have been brought" in the destination venue." (emphasis added)).

The convenience analysis involves the careful weighing and balancing of the *forum non conveniens* factors—a task committed to the discretion of the District Court. *Id.* at 312. However, it is a separate and subsequent requirement from the moving party to show that the case could have properly been brought in the transferee forum. This distinction is made explicit in the text of § 1404(a). The movant must satisfy *both* the statutory requirements *and then* clearly demonstrate that the transfer is clearly more convenient. *Id.* at 315. If it has not been shown that the transferee court could hear the case, the Court has no ability to transfer, regardless of how convenient or inconvenient the transfer might be. *See Hoffman*, 363 U.S. at 340.

4

In its Motion, Tianma states "if Plaintiffs could bring this suit anywhere in the U.S., they could have done so in the Central District of California." (Dkt. No. 69 at 7). Tianma's prevarication falls short of its statutory burden. In their briefing, Plaintiffs did not argue that the action could have been brought in the transferee district. (Dkt. No. 85 at 3). Further, during the hearing, counsel for Plaintiffs acknowledged that Tianma's statement was not a concession to the jurisdiction of the transferee court. (Dkt. No. 108 at 24:10–25:7). The Court also notes that though this topic was raised and discussed, Tianma's counsel did not address the threshold issue during the hearing, despite providing the Court with additional argument on other issues after the Court heard from Plaintiffs' counsel. Further, any lack of effort on Plaintiffs' part did not lessen or eliminate what was Tianma's clear burden. Tianma's silence at the hearing on this was deafening.

Earlier in the case, Tianma filed a Rule 12(b)(2) Motion to Dismiss Plaintiffs' Complaint for Lack of Personal Jurisdiction (the "Motion to Dismiss"), which was withdrawn. (Dkt. Nos. 21, 65, 66). Although Tianma's Motion to Dismiss was withdrawn, Tianma did not acknowledge that it was subject to the personal jurisdiction of any U.S. court in its motion requesting withdrawal, instead stating that its Motion to Dismiss was "meritorious and legally sound in substance." (Dkt. No. 65 at 2–3). Tianma, apparently wanting to have its cake and eat it too, skirted the threshold § 1404 question while attempting to preserve a jurisdictional challenge—which challenge is no longer before the Court.

"[T]he power of a District Court under § 1404(a) to transfer an action to another district is made to depend not upon the wish or waiver of the defendant, but, rather, upon whether the transferee district was one in which the action 'might have been brought' by the plaintiff." *Hoffman*, 363 U.S. at 343–44. Tianma did not meet its threshold burden to establish that this case

could have been originally brought in the Central District of California. Accordingly, the Court denies Tianma's Motion for that reason alone.

### b.  Tianma Has Not Shown That the Central District of California is Clearly More Convenient

Even if Tianma had adequately met its initial burden, the Court is of the opinion that Tianma has not shown that the Central District of California is clearly more convenient under the private and public interest factors.

#### i.  PRIVATE INTEREST FACTORS

##### 1.  Relative Ease of Access to Sources of Proof

The first private factor, ease of access to sources of proof, considers "documents and physical evidence" as opposed to witnesses. *See Volkswagen II*, 545 F.3d at 315; *Apple*, 979 F.3d at 1339–40. The Fifth and Federal Circuits have stressed that the physical location of such sources of proof remains relevant notwithstanding technological advances in data storage, copying, and transmission. *See Volkswagen II*, 545 F.3d at 316; *In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009). However, parties must specifically identify sources of proof, explain their relevance, and specifically identify the location of those sources. *AGIS Software Dev. LLC v. Huawei Device USA Inc.*, No. 2:17-cv-513, 2018 WL 2329752, at *5 (E.D. Tex. May 22, 2018); *Utterback v. Trustmark Nat'l Bank*, 716 F. App'x 241, 245 n.10 (5th Cir. 2017) ("Additionally, Utterback fails to identify with any specificity *which witnesses* and *what evidence* would be inaccessible in Mississippi but readily available in Florida. Without more, we cannot credit such vague and conclusional assertions." (emphasis in original)).

Tianma argues that the location of Tianma America in Chino, California favors transfer.[1] (Dkt. No. 69 at 7–8). Tianma also points to a JDI subsidiary, JDI Display America, Inc. ("JDI America"), which is based in Silicon Valley, California. (*Id*. at 3). Tianma states that U.S. sales of the accused products are largely done via Tianma America and that evidence relating to such sales is located in Tianma America's California office. (*Id*. at 7–8). To the extent any technical documents would be in Tianma America's possession, such would be in California as well. (*Id*. at 8). Tianma acknowledges that it maintains electronic documents in California, which neither weighs for or against transfer. (*Id*.). Tianma discounts proof associated with Texas sales representative TriStar Group ("TriStar"), which is based in Dallas, Texas, on the basis that JDI has not sought discovery from TriStar. (*Id*.).

In response, Plaintiffs argue that the first private factor is neutral because most of the relevant documentary evidence is likely to come from China or Japan. (Dkt. No. 85 at 4). Tianma America's electronic documents in California do not tip the scale towards transfer. (*Id*. at 4–5). Additionally, JDI America is based in the Northern District of California, not the Central District, and the reality is that moving largely electronic documents from Silicon Valley to Los Angeles is not clearly more convenient than moving them to Marshall. (*Id*. at 5). Importantly, Plaintiffs also argue that Tianma has not identified particular documents located in California to be presented at trial. (*Id*. at 5–6).

The Fifth Circuit has explained that a decreased inconvenience in access to proof due to technological advances "does not render this factor superfluous." *Volkswagen II*, 545 F.3d at 316.

---

[1] While it was not improper for Tianma to substantially rely on Tianma America and other third parties in its Motion— in fact, third parties who are likely to be witnesses at trial should be considered by the Court under *Volkswagen I*— the Court notes that Tianma had an ample opportunity to join Tianma America as a necessary party under Fed. R. Civ. P. 19 and chose not to pursue that opportunity. *See* 371 F.3d at 204 ("[T]he witnesses whom the Volkswagen Defendants contemplate would testify in support of its claim . . . would certainly become 'witnesses' whose convenience should be assessed in deciding the motion to transfer.").

Similarly, the Federal Circuit found error in concluding that the ease-of-access factor was neutral merely because "many of the documents were stored electronically[.]" *In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008) (citing *Volkswagen II*, 545 F.3d at 316); *see also Genentech*, 566 F.3d at 1346 (citing *Volkswagen II*, 545 F.3d at 316). Thus, the physical location of evidence— even if stored electronically—remains a relevant consideration for the convenience analysis. However, the realities of electronic retrieval and delivery is an established reality that must bear some weight even while not making this factor "superfluous."

It appears that most of the documentary evidence in the possession of the parties would be in China or Japan.[2] However, to the extent any documents are located in the United States, they are likely to be found in Chino, where Tianma America is located and where U.S. sales records are apparently kept, or Silicon Valley, the location of JDI America. Accordingly, the Court finds that this factor weighs **slightly in favor of transfer**.

### 2. Availability of Compulsory Process to Secure the Attendance of Witnesses

The second private factor considered is the availability of compulsory process to secure the attendance of witnesses. *Volkswagen II*, 545 F.3d at 316. Federal district courts have the absolute power to compel attendance of a trial, hearing, or deposition "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A). Federal district courts have trial subpoena power over a person "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is a party or a party's officer; or . . . [if the person] is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(B). As party witnesses almost invariably attend trial willingly,

---

[2] Counsel for Tianma acknowledged during the hearing that the majority of technical evidence, including that related to issues of infringement and validity of the patents, would be located outside of the United States. (Dkt. No. 108 at 17:1–20, 18:2–4).

"[t]his factor is directed towards *unwilling* third-party witnesses." *C&J Rent Servs., Inc. v. LEAM Drilling Sys., LLC*, No. 2:19-cv-00079, 2019 WL 3017379, at *3 (E.D. Tex. July 10, 2019) (emphasis added).

Tianma argues that JDI has not identified any third parties with relevant knowledge residing within 100 miles of this district. (Dkt. No. 69 at 8–9). The exception would be witnesses associated with TriStar. (*Id*. at 9). Tianma argues that TriStar's sales are handled through Tianma America to begin with and the Plaintiffs are not seeking discovery from TriStar. (*Id*.). Tianma identifies six Tianma America employees who are located in Chino, California, which is in the Central District of California, as well as one employee located in Santa Clara, California, which is in the Northern District of California.[3] (*Id*. at 5–6). Tianma America has two Texas-based employees: a regional sales director in Austin and a field application engineer in Arlington. (*Id*. at 6). Plaintiffs argue that compulsory process is not needed to secure the attendance of Tianma America witnesses and this factor is neutral. (Dkt. No. 85 at 6). Plaintiffs argue that the witnesses— one of whom is not within the subpoena power of the Central District of California—are not clearly relevant. (*Id*. at 7). However, even if the witnesses would provide relevant testimony, Tianma America has closely coordinated with its parent company, Tianma, and there is no indication that the witnesses would be unwilling to testify voluntarily. (*Id*.).

Although Tianma attempts to "double-count" the Tianma America witnesses under both this factor and the next, the Court will only count them under private interest factor number three. *AGIS*, 2018 WL 2329752, at *3 ("[Private interest factors two and three] do not permit a single source of proof to or witness to be 'double counted' . . . ."). Based on representations by counsel

---

[3] The identified employees are: Shide "Eric" Cheng, CEO of Tianma America; Yuanzheng "Rob" Li, Director of Engineering; Jian Jun Li, Director of Sales; Dean Collins, Director of Marketing; Kristin Ling, Inside Sales Manager; Melody Wowczuk, Accounting; and Arthur Ceballos, Logistics Manager. (Dkt. No. 69 at 5). Mr. Collins works in Santa Clara, while the rest are located in Chino. (*Id*. at 6).

as to foreign witnesses, the Court believes that process would likely be unnecessary for employees of Tianma America and JDI America. (Dkt. No. 108 at 30:21–31:1, 33:9–14 38:23–39:1). It is unclear whether the same would be true for potential witnesses from Hitachi America Ltd. ("Hitachi America"). (*Id.* at 33:17–20). Having considered this factor, the Court finds it is essentially **neutral**.

### 3.   Cost of Attendance for Willing Witnesses

The third private factor, the cost of attendance for willing witnesses, has been described as the most important factor. *See Genentech*, 566 F.3d at 1343 (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006)). Courts properly give more weight to the convenience of non-party witnesses than to party witnesses. *See Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 870–71 (E.D. Tex. 2012); *State Street Capital Corp. v. Dente*, 855 F. Supp 192, 198 (S.D. Tex. 1994). The Fifth Circuit has established what is commonly called the "100-mile rule": when the distance between the transferor and proposed transferee venues exceeds 100 miles, "the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 201; *Genentech*, 566 F.3d at 1343; *Apple*, 979 F.3d at 1341. The distance from Los Angeles, California to Marshall, Texas is approximately 1,600 miles.

Tianma argues that the presence of willing witnesses in California favors transfer. (Dkt. No. 69 at 9). Third-parties Tianma America, JDI America, and Hitachi America Ltd. ("Hitachi America") all have potential witnesses based in California. (*Id.*). Tianma also argues that party witnesses would have an easier time traveling to California from China or Japan than they would traveling to Marshall. (*Id.*). Lastly, Tianma points to expert witnesses for Plaintiffs who reside in the State of Washington and Oregon, which are closer to the Central District of California. (*Id.* at

10). Plaintiffs argue that Tianma's argument regarding party witnesses should be given little weight, if any, because traveling from China or Japan would be a great distance whether it is to Los Angeles or Marshall. (Dkt. No. 85 at 8). Plaintiffs also argue that Tianma America witnesses' convenience should be given little weight due to control by Tianma, and further, should not be considered under both private interest factors two and three. (*Id*. at 8–9). Plaintiffs argue that JDI America and Hitachi America witnesses were not identified by Tianma and that expert witness travel should be given little weight by the Court. (*Id*. at 9–10).

It is clear that most witnesses associated with the parties in this case would travel from either China or Japan. Although the Fifth Circuit and Federal Circuit apply the "100-mile rule," the Federal Circuit stated in *Genentech* that the 100-mile rule should not be rigidly applied where witnesses will have to travel a significant distance no matter where they testify. *See* 566 F.3d at 1344. "Although it might be true that these individuals will need to travel a greater distance to reach [EDTX] than [CDCA] . . . in either instance these individuals will likely have to leave home for an extended period of time and incur travel, lodging, and related costs." *In re Apple*, 979 F.3d 1332, 1342 (Fed. Cir. 2020).

Given the late stage of the case in which this Motion was brought, the Court and parties have the benefit of a clearer idea of key witnesses likely to appear at trial. *See Genentech*, 566 F.3d at 1343 ("A district court should assess the relevance and materiality of the information the witness may provide."). Tianma has identified seven California-based Tianma America employees who may testify at trial, six of whom are located within the Central District of California. However, Tianma's counsel indicated at the hearing that only one or two of these individuals were likely to actually testify at trial. (Dkt. No. 108 at 38:10–14, 17–21) ("I can represent . . . Mr. Eric Cheng, one of those folks who was identified in the papers, he will be on our witness list . . . at least one

11

other person will be . . . ."). Likewise, the Court does not give much weight to TriStar or Tianma America witnesses located in Texas, because they are unlikely to be key witnesses at trial. JDI America and Hitachi America do not have employees identified as potential witnesses.[4] Additionally, the Court does not assign much weight to the location of expert witnesses under this factor, as such retained experts are generally well paid for their time and expenses. *AGIS Software Dev. LLC v. Apple, Inc.*, No. 2:17-CV-516-JRG, 2018 WL 2721826, at *6 (E.D. Tex. June 6, 2018) ("[T]he Court finds it appropriate to give [experts'] convenience little weight, but not no weight."). Accordingly, the Court finds this factor **neutral**.

### 4. All Other Practical Problems That Make Trial of Case Easy, Expeditious, and Inexpensive

The fourth private factor, practical problems, includes concerns rationally based on judicial economy. *Quest NetTech*, 2019 WL 6344267, at *6; *see also In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010). Tianma argues that the fourth private factor is neutral. (Dkt. No. 69 at 10). The Patents-in-Suit have not been previously litigated in a patent infringement dispute and no substantive proceedings have occurred yet in this case. (*Id*.). Tianma explains its delay in filing its Motion by arguing that Plaintiffs did not pursue discovery from Tianma America until just a few weeks before this Motion was filed. (*Id*. at 11). Tianma does note the Court's schedule, including a claim construction hearing in mid-August and the fact discovery deadline in September. (*Id*.). Plaintiffs argue that Tianma was dilatory in bringing this Motion and that the case has progressed substantially, being set for trial in just a few months. (Dkt. No. 85 at 10). Plaintiffs note that by the time this Motion is decided, the Court will likely have conducted the *Markman* hearing,[5] and discovery will close in September. (*Id*. at 11). Tianma argues that Tianma America was

---

[4] Further, those entities are located in the Northern District California.
[5] Magistrate Judge Roy S. Payne conducted the claim construction hearing on August 12, 2021. (*See* Dkt. No. 104).

subpoenaed later in the case, but Plaintiffs argue in response that Tianma America was always at issue in the case, noting that Tianma America is mentioned in the Complaint over 100 times. (*Id.* at 12).

This "judicial economy" factor weighs heavily against transferring this case, largely due to Tianma's delay in bringing this motion. *See Peteet v. Dow. Chem. Co.*, 868 F.2d 1428, 1346 (5th Cir. 1989) ("Parties seeking a change of venue should act with 'reasonable promptness.'"; *Utterback v. Trustmark Nat'l Bank*, 716 F. App'x 241, 245 (5th Cir. 2017) ("Utterback insists the timing of his motion is immaterial to the § 1404(a) analysis. Our caselaw suggests the opposite."). The Federal Circuit and Fifth Circuit have raised the issue on the other foot as well, criticizing district courts for prioritizing the merits of a case while transfer motions were pending. *See Apple*, 979 F.3d at 1338, 1343 ("[T]he district court barreled ahead on the merits in significant respects . . ."); *In re Horseshoe Ent't*, 337 F.3d 429, 433 (5th Cir. 2003). The Court is obligated to resolve venue issues before reaching the merits of the case, and it follows that when a party chooses to prioritize litigating the merits before venue issues, that is a factor the Court should consider. In this case, the Plaintiffs filed their Complaint on August 31, 2020, and nearly ten months passed before Tianma filed this Motion.

Tianma's stated reason for waiting so long was a subpoena directed to Tianma America in April 2021—however, Tianma America is mentioned numerous times in Plaintiffs' Complaint and in briefing on Tianma's withdrawn Motion to Dismiss. The claim construction hearing was held on August 12, 2021, fact discovery will close on September 13, 2021, expert discovery will close on October 15, 2021, the pretrial conference is set for January 10, 2022, and jury selection is set for February 7, 2022. (Dkt. No. 34). The Court has already conducted multiple discovery hearings

in this case. (*See generally* Dkt. Nos. 94, 108). This investment of time and resources transpired

largely due to Tianma's delay in seeking a change of venue.

Tianma represents that, should the Court grant its Motion, the parties would jointly request

a trial date from the California court before December 2022, when an *inter partes* review decision

is anticipated from the U.S. Patent and Trademark Office relating to the Patents-in-Suit. (Dkt. No.

108 at 18:20–19:3). However, and as the Court noted at the hearing, the fact that such a request

would be made would not guarantee that the trial date would fall within that timeframe, and even

if it did, such a trial date would be ten months after the current trial date in this Court. (*Id*. at

19:4–5, 22:3–12). Additionally, and as the Court noted at the hearing, the transferee court in the

Central District of California would be well within its power to re-adjudicate certain issues,

including claim construction. (*Id*. at 20:3–14). Said another way, Plaintiffs and Tianma would have

little if any control as regards the transferee court's docket or schedule.

Transfer could very well put this case at the back of the line in the Central District of

California and subject this case to significant re-litigation. *See Utterback*, 716 F. App'x at 245

("[I]t would emphatically not serve the interest of justice to allow [the moving party] to take a

second 'bite[] at the apple' in Florida, just after learning he would lose in Mississippi."").

Accordingly, the Court finds that this factor substantially weighs **against transfer**.

### ii.   PUBLIC INTEREST FACTORS

#### 1.   Administrative Difficulties Flowing from Court Congestion

Tianma argues that this factor is neutral. (Dkt. No. 69 at 13).  Citing *Genentech*, Tianma

argues that the speed of the transferee court should not outweigh the other factors, and

acknowledges this district's faster time to trial. (*Id*.) (citing 566 F.3d at 1347). In its reply brief,

Tianma argues that the Court's trial date is subject to change in light of ongoing COVID

14

restrictions in Japan, which could postpone depositions that must be taken. (Dkt. No. 90 at 5). Plaintiffs argue that the first public factor weighs against transfer due to this Court's faster time to trial than the Central District of California. (Dkt. No. 85 at 13). Additionally, delays would almost inevitably result due to the advanced stage of the case. (*Id*. at 13–14). With respect to depositions of Japanese witnesses causing delay, Plaintiffs note that several such depositions are presently scheduled and ready to go forward. (Dkt. No. 97 at 3).

This Court has a faster time to trial compared to the Central District of California—as acknowledged by Tianma in its motion. (*See* Dkt. No. 69 at 13; *see also* Dkt. No. 69-16; Dkt. No. 85-4). Further, the stage of the case has progressed to the point that a transfer would unavoidably extend the time to trial in this matter even further. The Court finds that this factor weighs **against transfer**.

### 2.   The Local Interest in Having Localized Interests Decided at Home

"[J]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206. Tianma argues that the second public interest factor weighs in favor of transfer. (Dkt. No. 69 at 12). Tianma relies heavily on the California-based subsidiaries of JDI and itself. (*Id*.). Tianma points to the fact that alleged infringing sales were to and by Tianma America in Chino, which implicates California interests. (*Id*.). Tianma argues that sales to Texas are a very small part of alleged infringing sales and do not show a meaningful connection to this case. (*Id*.). Plaintiffs argue that the second public factor is neutral. (Dkt. No. 85 at 14). Plaintiffs argue that the parties are foreign and the case concerns activities without a nexus to either the Eastern District of Texas or the Central District of California.  (*Id*.).  Tianma argues that shipping and selling products to Tianma America in

California favors transfer, and Plaintiffs argue that Tianma also sells and ships to others across the United States. (*Id.*).

All parties are foreign. Further, the design and development of the accused products likely occurred entirely overseas. Although alleged infringing sales are made by Tianma to Tianma America in California, and from there to U.S.-based customers, additional sales are made to other third-parties, including in Texas. The Court does not view local interests as a "fiction," but the research, design, and development of the accused products here did not occur in California or Texas. *In re Samsung Elecs.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021). Also, it is notable that Tianma seeks throughout the venue process to forget the corporate separateness of its non-party domestic subsidiary. Any local interest analysis must relate to Tianma alone, not a third-party who Tianma elected not to join or bring into this case—even if it is a subsidiary corporation. Accordingly, the Court views this factor as **neutral**.

### 3.   Remaining Public Interest Factors

The parties agree that public interest factors (3) familiarity with the forum and (4) avoidance of problems of conflicts of law are neutral. (Dkt. No. 69 at 13; Dkt. No. 85 at 15). The Court agrees and finds both factors **neutral**.

### iii.   SUMMARY

Having considered the private and public interest factors, the Court concludes as follows: the access-to-evidence factor weighs only slightly in favor of transfer; the compulsory-process factor is neutral; the willing-witnesses factor is neutral; the practical-problems factor clearly weighs against transfer, largely because of the delayed timing of Tianma's Motion; the court-congestion factor also weighs against transfer; the local interests factor is neutral; and the other public interest factors are neutral. Accordingly, and even if the threshold issue discussed

above had been met, the Court finds that Tianma has not clearly established that the Central District of California is a clearly more convenient venue than the Eastern District of Texas.

**IV.     CONCLUSION**

For the reasons stated above, the Court is of the opinion that Tianma has failed to meet its burden to show that this case could have originally been brought in the Central District of California or to demonstrate that litigating in that district would be clearly more convenient. Accordingly, the Motion to Transfer is **DENIED**.

**So ORDERED and SIGNED this 25th day of August, 2021.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE